B 104 [08/07]

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |

**PARTY** (Check One Box Only)
- ☐ Debtor
- ☐ Creditor
- ☐ Trustee
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Other

**PARTY** (Check One Box Only)
- ☐ Debtor
- ☐ Creditor
- ☐ Trustee
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Other

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11 - Recovery of money/property - § 542 turnover of property
- ☐ 12 - Recovery of money/property - § 547 preference
- ☐ 13 - Recovery of money/property - § 548 fraudulent transfer
- ☐ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
- ☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61 - Dischargeability - § 523(a)(5), domestic support
- ☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
- ☐ 63 - Dischargeability - § 523(a)(8), student loan
- ☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71 - Injunctive relief - reinstatement of stay
- ☐ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01 - Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa *et.seq.*
- ☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B 104

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | | BANKRUPTCY CASE NO. |
| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1  VANDERHOFF LAW GROUP
   Alan Vanderhoff, Cal. Bar No. 138032
2  Jeanne C. Vanderhoff, Cal. Bar No. 138011
   750 B Street, Suite 1620
3  San Diego, California 92101
   Telephone: (619) 299-2050
4
   Attorneys for KBR Group, LLC, KBR Opportunity
5  Fund I, LP, and KBR Opportunity Fund II, LP

6

7

8

9                    UNITED STATES BANKRUPTCY COURT

10                   SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| In re: | Case No. 10-03361-PB11-INV |
| COLONY PROPERTIES INTERNATIONAL II, LLC, a California limited liability company, | Adv. No. |
| Debtor. | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| KBR GROUP, LLC, a California limited liability company; KBR OPPORTUNITY FUND I, LP, a California limited partnership; and KBR OPPORTUNITY FUND II, LP, a California limited partnership, Plaintiffs, v. NICOLAS MARSCH, III, an individual; COLONY PROPERTIES INTERNATIONAL, LLC, a California limited liability company; COLONY PROPERTIES INTERNATIONAL II, LLC, a California limited liability company; BRIARWOOD CAPITAL, LLC, a California limited liability company; and KRMW REAL ESTATE INVESTMENT GROUP, LLC, a California limited liability company, Defendants. | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KBR Group, LLC ("KBR Group"), KBR Opportunity Fund I, LP ("KBR Fund I"), and KBR Opportunity Fund II, LP ("KBR Fund II") (collectively "Plaintiffs" or the "KBR Parties") allege as follows:

## JURISDICTION AND VENUE

1.    This Court has exclusive jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2.    This matter constitutes a core proceeding pursuant to and 28 U.S.C. §§ 157(b)(2)(A), (O), and 1334.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

4.    Plaintiffs are informed and believe and thereon allege that the causes of action set forth herein are properly brought in this Court and are not subject to arbitration because they are core proceedings.  This complaint is not intended as a waiver of any applicable rights or duties to arbitrate.

## THE PARTIES

5.    Plaintiff KBR Group is a California limited liability company.

6.    Plaintiff KBR Fund I is a California limited partnership.

7.    Plaintiff KBR Fund II is a California limited partnership.

8.    Plaintiff is informed and believes and thereon alleges that defendant Colony Properties International, LLC ("Colony I") is a California limited liability company with its principal place of business in California. Plaintiff is further informed and believes and thereon alleges that Colony I is the sole member of Colony Properties International II, LLC.

9.    Plaintiff is informed and believes and thereon alleges that defendant Colony Properties International II, LLC ("Colony II") is a California limited liability company with its principal place of business in California.

10.    Plaintiff is informed and believes and thereon alleges that defendant Marsch is a San Diego resident and is the sole member of Colony I.

11.    Plaintiff is informed and believes and thereon alleges that defendant Briarwood Capital, LLC ("Briarwood") is a California limited liability company with its

principal place of business in California.  Plaintiff is further informed and believes and thereon alleges that Marsch is the sole member of Briarwood.

12.    Defendant KRMW Real Estate Investment Group, LLC ("KRMW") is a California limited liability company with its principal place of business in California.  The membership of KRMW is as follows:  Briarwood is the Common Member and KBR Fund II is the Preferred Member.

13.    Marsch, Briarwood, Colony I, and Colony II are collectively referred to herein as the "Marsch Parties."

**GENERAL ALLEGATIONS**

**The Colony Loan Agreement**

14.    On or about June 24, 2008, Colony I, Colony II, Marsch, and KBR Fund I entered into a written loan agreement (the "Colony Loan Agreement"). A true and correct copy of the Colony Loan Agreement is attached as **Exhibit 1.**

15.    Pursuant to the terms of the Colony Loan Agreement, Colony I and Colony II jointly borrowed from KBR Fund I the original principal sum of $4,900,000, of which $4,400,000 was initially disbursed and the balance was held as reserves for specific payments.

16.    Colony I and Colony II made, executed, and delivered to KBR Fund I a Promissory Note in the original principal amount of $5,880,000 to evidence the loan (the "Colony Loan Promissory Note").  The Colony Loan Agreement expressly states that the Promissory Note shall be in the face amount of the loan plus the maximum Premium Amount, which is defined in the Colony Loan Agreement. A true and correct copy of the Colony Loan Promissory Note is attached as **Exhibit 2.**

17.    KBR Fund I currently holds and owns all right, title, and interest in the Colony Loan Promissory Note and is the true and record beneficiary of the Colony Loan Agreement and the security interests thereto.

18.    The Colony Loan Agreement is secured by certain property interests including, without limitation, the following:

3

        a.     A first priority mortgage lien encumbering real property in San Jose Del Cabo, Mexico, known as No. 496 Villas del Mar ("Unit 496") and No. 21 Villas Del Mar ("Unit 21"), and all improvements and personal property on such real property, recorded in the Cabo San Lucas County Recorder's Office on June 15, 2009, as Instrument No. 572312, and insured by LandAmerica Title Insurance Company of Mexico, S.A., Policy No. M08-KBR-SJC-319, issued on August 16, 2008;

        b.     An Assignment of Leases and Rents on Unit 496 and Unit 21;

        c.     A first priority security interest in all of Colony I's interest in Colony II and all other assets of Colony I;

        d.     A first priority security interest in all of Marsch's member interest in Colony I; and

        e.     A security interest in all assets of Colony II.

19.     KBR Fund I's security interests in personal property are perfected by UCC Financing Statements filed with the California Secretary of State.

20.     Colony I and Colony II are obligated by the Promissory note and the Colony Loan Agreement to make monthly payments to KBR Fund I and to comply with various other obligations as set forth in the loan documents.

21.     The Colony Loan Agreement makes clear that it is an event of default should Colony I and Colony II fail to pay within ten days of when due any principal or interest under the Promissory Note.

22.     On May 1, 2009, counsel for Colony I notified counsel for KBR Fund I that it would not be making a payment due on May 1, 2009.

23.     On May 6, 2009, counsel for KBR Fund I replied that an interest payment became due on May 1, 2009 under Section 2.5 of the Colony Loan Agreement, and that if payment were not made by May 10, 2009, an event of default would occur.

24.     To date, there has been no payment of the interest due on May 1, 2009.

25.     KBR Fund I has received no payments under the Colony Loan Agreement since April of 2009.

26.     Accordingly, since May 10, 2009, KBR Fund I has been entitled to exercise all of its rights and remedies under the Colony Loan Agreement, based on Colony I and Colony II's default of that agreement as of May 10, 2009.

27.     On May 15, 2009, Shawn Wamstad ("Wamstad") notified Marsch on behalf of KBR Fund I that KBR Fund I was exercising its right to accelerate the loan and declare all loan funds to be due and payable.

28.     On May 20, 2009, Michel Kucinski ("Kucinski"), on behalf of KBR Fund I, sent Marsch a further Notice of Default on the Colony Loan Agreement.

29.     As of May 10, 2009, the amounts disbursed under the Colony Loan Agreement and all interest and premium thereon together with all sums accruing under the loan totaled $5,054,932.42.

30.     Interest and other charges have continued to accrue since that time.

31.     Colony I and Colony II have failed and refused, and continue to fail and refuse, to pay the sums due and owing.

32.     Under the Colony Loan Agreement, regardless of the default and acceleration, the loan matured on June 24, 2009.

**<u>The KRMW Operating Agreement</u>**

33.     On October 9, 2008, Marsch, Briarwood, and KBR Fund II entered into that certain Operating Agreement for KRMW Real Estate Investment Group, LLC a California Limited Liability Company (the "KRMW Operating Agreement"). A true and correct copy of the KRMW Operating Agreement is attached as **Exhibit 3**.

34.     On or about October 9, 2008, the Articles of Organization for KRMW were filed with the California Secretary of State.  The membership of KRMW is as follows: Briarwood is the Common Member and holds a thirty-five percent (35%) membership interest in KRMW and KBR Fund II is the Preferred Member and holds a sixty-five percent (65%) membership interest in KRMW.

5

35.    Marsch was the manager is the Manager of KRMW from October 9, 2008 through February 23, 2010.

36.    Under the KRMW Operating Agreement, Briarwood and KBR Fund II each made capital contributions to KRMW.

37.    Specifically, under the KRMW Operating Agreement, KBR Fund II contributed to KRMW $3,000,000 in cash.  By agreement of the parties, KBR Fund II invested $3,000,000 rather than $4,190,000 for the contribution amount set forth in Section 2.1.2 of the KRMW Operating Agreement.

38.    Furthermore, under the KRMW Operating Agreement, Briarwood and Marsh contributed to KRMW the following:

a.    All proceeds, awards, distributions, and other rights of value from their direct and indirect claims against Lennar Corporation relating to HCC Investors, LLC and Lennar Bridges, LLC and The Bridges development at Rancho Santa Fe, including claims asserted in Superior Court of San Diego Case No. GIC877446 ("Bridges Litigation"), and their claims against Lennar Corporation relating to The Lakes development in Rancho Santa Fe, including claims asserted in Superior Court of San Diego Case No. GIC875457 ("Lakes Litigation") (collectively the "Lennar Litigation");

b.    All of their direct and indirect ownership interests in both HCC Investors, LLC and Lennar Bridges, LLC to the fullest extent permitted by these companies' governing documents (except for certain identified Retained Benefits); and

c.    Their assumption of the obligation to pay all Lennar litigation costs. (KRMW Operating Agreement Section 2.1.1.)

39.    The  KRMW Operating Agreement gives KBR Fund II a Preferred Member Put Right ("Put Right"), to require KRMW, Briarwood, or Marsch to purchase, on thirty days' notice, all of KBR Fund II's Preferred Units in KRMW (excluding the Retained Equity and Retained Litigation Interest) for a certain purchase price payment in cash pursuant to a

1   formula which includes adjustments for Preferred Returns minus certain Option Fees.

2   (KRMW Operating Agreement at Section 4.4(2).)

3       40.     KBR Fund II was authorized to exercise its Put Right on or after the earlier of

4   (i) the second anniversary of the Effective Date of the KRMW Operating Agreement; or (ii)

5   the date Marsch failed to timely exercise the right to extend the Repurchase Right and/or

6   timely pay the $120,000 option fee or failed to timely pay any Option Fee after the 18th

7   month anniversary of the Effective Date; or (iii) the Litigation Determination Date.  (KRMW

8   Operating Agreement Section § 3.1.2.4.)  One such event would be sufficient to trigger KBR

9   II's Put Right.  Multiple triggering events have occurred.

10      41.     The time to exercise the right to extend the Repurchase Right and timely pay

11  the $120,000 option fee was at any time up to the first anniversary of the Effective Date.

12  (KRMW Operating Agreement § 3.1.2.1.1.)  KBR Fund II and Marsch disagree on whether

13  the Effective Date for the KRMW Operating Agreement is the date the Agreement was

14  dated, October 9, 2008, or the date on which KBR Fund II funded its investment in KRMW,

15  November 5, 2008.  Under either formulation, the 12-month anniversary of the Effective

16  Date has passed.  Marsch never exercised the option to extend the Repurchase Right and

17  never paid the option fee.  Marsch's failure to timely exercise the option to extend the

18  Repurchase Right triggered KBR Fund II's right to exercise its Put Right.

19      42.     KBR II's right to exercise its Put Right was also triggered on two separate

20  occasions by occurrences of the Litigation Determination Date, as defined in the KRMW

21  Operating Agreement.  Section 4.4 of the KRMW Operating Agreement defines a "Litigation

22  Determination Date" as including:  (1) if the Lennar Litigation is not fully adjudicated within

23  12 months of the Effective Date; or (2) if either action comprising the Lennar Litigation is

24  dismissed or results in no award to Marsch and/or KRMW for any one action.

25      43.     Neither case comprising the Lennar Litigation has been fully adjudicated,

26  although 12 months past the Effective Date has long passed.  Moreover, one of the cases

27  comprising the Lennar Litigation was dismissed, and the other case remains in trial.  These

28  facts provided KBR Fund II two additional bases for exercising its Put Right.

7

44.     As KBR Fund II's security for the Preferred Member Put Right, Marsch, KRMW and Briarwood pledged a security interest and lien on the following:

     a.     Any and all claims arising out of, related to, or that may be derived from HCC Investors, LLC and the Lennar Litigation;

     b.     Certain Retained Benefits, to the extent considered to be independent of and not considered part of Briarwood's membership in HCC Investors, LLC;

     c.     Marsch's membership interest in Briarwood and Colony II;

     d.     Colony II's membership interest in Colony I; and

     e.     Any and all proceeds of or from the foregoing.  (KRMW Operating Agreement at Section 3.1.2.4.)

45.     These security interests are evidenced by three Security Agreements KBR Fund II entered into with Briarwood, Marsch, and Colony I.

46.     KBR Fund II's security interests in personal property are perfected by UCC Financing Statements filed with the California Secretary of State.

47.     The KRMW Operating Agreement states that Marsch, Briarwood, and KRMW "authorize the holder of the Preferred Units [KBR Fund II]" to take numerous measures upon default, including to "take any further action necessary or appropriate to perfect and enforce such security interests." (KRMW Operating Agreement at Section 3.1.2.4.)

48.     On January 16, 2009, Judge William R. Nevitt issued a judgment in the Lakes Litigation, granting the defendants' motion for judgment on the pleadings with prejudice and without leave to amend.

49.     On January 29, 2009, Robert Blanchard, counsel for KBR Fund II, sent a letter to David Fisher, counsel for Marsch and Briarwood, noting that the Lakes Litigation had been dismissed and stating that KBR Fund II reserved the right to exercise its Preferred Member Put Right in the future.

50.     On March 25, 2009, Wamstad sent a letter on behalf of KBR Fund II to Marsch notifying him of KBR Fund II's election to exercise the Preferred Member Put Right.

8

1    At that time, the Put Purchase Price was $4,734,000; the first installment of that amount was

2    due on or before sixty days after Marsch received the written notice.

3           51.     On April 22, 2009, Marsch wrote Wamstad denying that the Lakes Litigation

4    had been dismissed and refusing KBR Fund II's request to exercise the Put Right .

5           52.     On May 20, 2009, Kucinski sent Marsch a Notice of Default with respect to

6    the KRMW Operating Agreement.  Kucinski advised that under the Security Agreements for

7    the KRMW Operating Agreement, Colony I and Colony II's default on the Colony Loan

8    Agreement also constituted an Event of Default.

9           53.     KBR Fund II elected to accelerate the due date of the Put Purchase Price as

10    permitted by the Security Agreements.

11           54.      As of May 20, 2009, the Put Purchase Price was $4,881,856.

12    **<u>Non-Bankruptcy Litigation</u>**

13           55.     On May 21, 2009, the Marsch Parties filed a pre-emptive lawsuit against the

14    KBR Parties and certain KBR individuals in San Diego Superior Court, Case No. 37-2009-

15    00090247-CU-BC-CTL (the "First Lawsuit").  The First Lawsuit was assigned to Hon. David

16    B. Oberholtzer.

17           56.     Apparently dissatisfied with their judicial assignment, the Marsch Parties filed

18    a second, identical case against the KBR Parties in San Diego Superior Court the next day,

19    May 22, 2009, Case No. 37-2009-00090462-CU-BC-CTL (the "Second Lawsuit"). The

20    Second Lawsuit was assigned to Hon. Jay M. Bloom.  Seemingly satisfied with their second

21    judicial assignment, the Marsch Parties then dismissed the First Lawsuit.

22           57.     The KBR Parties petitioned to compel arbitration and to stay the action before

23    Judge Bloom.  On August 14, 2009, Hon. Jay M. Bloom granted the petition to stay that

24    action and compel arbitration of the entire dispute against all the KBR Parties based on the

25    mandatory arbitration provisions in the Colony Loan Agreement and the KRMW Operating

26    Agreement.

27           58.     The Second Lawsuit was assigned to Judge Midlam for arbitration.

28

9

59.     The Marsch Parties never challenged Judge Bloom's order.  Rather, on October 26, 2009 the Marsch Parties attempted to circumvent that order by commencing a third action in San Diego Superior Court, Case No. 37-2009-00100835-CU-BC-CTL (the "Third Lawsuit").  In the Third Lawsuit, the same Marsch Parties raised the same allegations against the same KBR Parties for the third time, notwithstanding the fact that Judge Bloom already ordered all such claims to binding arbitration.  All 96 paragraphs in all 10 causes of action that Judge Bloom ordered to arbitration reappeared in the Third Lawsuit.  The Marsch Parties attempted to justify their violation of Judge Bloom's mediation order by asserting that they had named other parties to the Third Lawsuit.

60.     The Third Lawsuit was removed to the United States District Court for the Southern District of California and is currently pending before Judge Roger T. Benitez as Case No. 09 CV 2680 BEN AJV. The Third Lawsuit is not stayed by the automatic stay of Bankruptcy Code section 362.

61.     There are several KBR motions that are currently under submission before Judge Benitez in the Third Lawsuit including, (1) a motion for Rule 11 sanctions against the Marsch Parties and their attorneys for filing the Third Lawsuit, (2) another motion to compel arbitration, and (3) a motion to disqualify one of the Marsch Parties' counsel.

**Pending Bankruptcy Cases**

62.     On February 23, 2010, Briarwood filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court") thereby commencing the bankruptcy case of *In re Briarwood Capital, LLC*, Case No. 10-02677 (the "Briarwood Bankruptcy Case"). The bankruptcy petition in the Briarwood Bankruptcy Case was signed by Marsch as "Managing Member."

63.     On February 25, 2010, Marsch filed a voluntary chapter 11 bankruptcy petition, purportedly on behalf of Colony I, thereby commencing the bankruptcy case if *In re Colony Properties International,  LLC*, Case No. 10-02937 (the "Colony I Bankruptcy Case").

64.     Marsch signed the petition which commenced the Colony I Bankruptcy Case as "Managing Member." Marsch, however, was not the managing member of Colony I when the Colony I Bankruptcy Case was commenced. Marsch was wholly without authority to sign the bankruptcy petition.

65.     Marsch is a rouge agent who is purporting to act as the debtor in possession in the Colony I Bankruptcy Case, but, in fact, has no authority to do so.

66.     On February 25, 2010, Marsch filed a voluntary petition under chapter 11 of the Bankruptcy Code in the Bankruptcy Court on behalf of himself thereby commencing the bankruptcy case if *In re Nicolas Marsch III*, Case No. 10-02939 (the "Marsh Bankruptcy Case").

67.     On February 28, 2010, Marsch filed an involuntary petition under chapter 11 of the Bankruptcy Code in the Bankruptcy Court on behalf of Briarwood Capital, Inc. and against Colony II, thereby commencing the bankruptcy case if *In re Colony Properties International II,* , Case No. 10-03361 (the "Colony II Bankruptcy Case").

68.     The attorney hired by Marsch to file the involuntary bankruptcy petition in the Colony II Bankruptcy Case served the involuntary summons on Marsch as the purported agent of Colony II. In fact, Marsch has no authority to act as the agent of Colony II in the Colony II Bankruptcy Case.

## Change of Control of Debtor and Related Entities

### Colony I

69.     In furtherance of the Colony Loan Agreement, Marsch executed that certain Security Agreement and Membership Interest Pledge (the "Marsch/KBR Fund I Security Agreement") dated June 24, 2008. The Marsch/KBR Fund I Security Agreement granted to KBR Fund I a security interest in certain collateral including, without limitation, one hundred percent (100%) of the income, distributions, and capital of Colony I and the voting rights of a one hundred percent (100%) member of Colony I. A true and correct copy of the Marsch/KBR Fund I Security Agreement is attached hereto as **Exhibit 4.**

11

70.     Section 7.3 of the Marsch/KBR Fund I Security Agreement provides that, upon the event of default, KBR Fund I has the right to exercise "all rights of Marsch to exercise the voting and other consensual rights that he would otherwise be entitled to exercise pursuant to the CPI I operating agreement . . . ."

71.     Section 7.4 of the Marsch/KBR Fund I Security Agreement provides that, upon the event of default, KBR Fund I has the right "to vote the Member Interest (whether or not transferred into the name of Lender), and give all consents, waivers and ratifications in respect of the Collateral and otherwise act with respect thereto as though it were the outright owner thereof; UPON THE EVENT OF DEFAULT AND AFTER ANY APPLICABLE GRACE PERIOD, MARSCH HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS LENDER THE PROXY AND ATTORNEY-IN-FACT OF MARSCH, COUPLED WITH AN INTEREST, WITH FULL POWER OF SUBSTITUTION TO DO SO; SUCH PROXY SHALL CONTINUE IN FULL FORCE AND EFFECT AND TERMINATE UPON THE SOONER TO OCCUR OF: (a) THE INDEFEASIBLE PAYMENT IN FULL UNDER THE LOAN AGREEMENT; AND (b) SATISFACTIONS IN FULL OF THE SECURED OBLIGATIONS."

72.     On February 23, 2010, KBR Fund I executed a Unanimous Written Consent of the Proxy Holder and Attorney-In-Fact of the Sole Member of Colony Properties International LLC (the "Colony I Unanimous Written Consent").  A true and correct copy of the Colony I Unanimous Written Consent is attached hereto as **Exhibit 5.**

73.     Through the Colony I Unanimous Written Consent, KBR Fund I, acting as the proxy holder and attorney-in-fact of Marsch, (1) removed Marsch as the manager of Colony I and stripped Marsh of all powers to act on behalf of Colony I, and (2) appointed KBR Group as the manager of Colony I.

74.     KBR Group is the current manager of Colony I.

75.     KBR Fund I, as the proxy holder and attorney-in-fact of the sole member of Colony I has the sole right to control Colony I.

76.     By a letter dated February 24, 2010 (the February 24th Letter") from counsel for the KBR Parties to Attorney Jeffrey Davis, transmitted via e-mail, the KBR Parties delivered a copy of Colony I Unanimous Written Consent and informed Attorney Davis that Marsch had been removed as the manager of Colony I. The letter also expressly directed Attorney Davis not to file a voluntary bankruptcy petition on behalf of Colony I. A true and correct copy of the February 24th Letter is attached hereto as **Exhibit 6.**

77.     The Colony I Unanimous Written Consent was also served on Marsch by certified mail and by e-mail on February 24, 2010. Marsch refused delivery of the certified mail. A true and correct copy of the refused certified letter containing the Colony I Unanimous Written Consent is attached hereto as **Exhibit 7.**

78.     Notwithstanding the Colony I Unanimous Written Consent and the unambiguous communication from the manager of Colony I and the proxy holder and attorney-in-fact of the sole member of Colony I, on February 25, 2010, Attorney Davis filed a voluntary bankruptcy petition for Colony I that was signed by Marsch as "Managing Member."

79.     The change in control of Colony I occurred prior to the commencement of the Colony I Bankruptcy Case and the Marsch Bankruptcy Case.

80.     The voluntary bankruptcy petition purportedly filed by Colony I is unauthorized and invalid.

**Colony II**

81.     In furtherance of the Colony Loan Agreement, Colony I executed that certain Security Agreement and Membership Interest Pledge (the "Colony I Security Agreement") dated June 24, 2008. The Colony I Security Agreement granted to KBR Fund I a security interest in certain collateral including, without limitation, one hundred percent (100%) of the income, distributions, and capital of Colony II and the voting rights of a one hundred percent (100%) member of Colony II. A true and correct copy of the Colony I Security Agreement is attached hereto as **Exhibit 8.**

82.     Section 7.3 of the Colony I Security Agreement provides that, upon the event of default, KBR Fund I has the right to exercise "all rights of [Colony I] to exercise the voting and other consensual rights that he would otherwise be entitled to exercise pursuant to the CPI II operating agreement . . . ."

83.     Section 7.4 of the Colony I Security Agreement provides that, upon the event of default, KBR Fund I has the right "vote the Membership Interest (whether or not transferred into the name of Lender), and give all consents, waivers and ratifications in respect of the Collateral and otherwise act with respect thereto as though it were the outright owner thereof; UPON THE EVENT OF DEFAULT  AND AFTER ANY APPLICABLE GRACE PERIOD, GRANTOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS LENDER THE PROXY AND ATTORNEY-IN-FACT OF GRANTOR, COUPLED WITH AN INTEREST, WITH FULL POWER OF SUB.STITUTION TO DO SO; SUCH PROXY SHALL CONTINUE IN FULL FORCE AND EFFECT AND TERMINATE UPON THE SOONER TO OCCUR OF: (a) THE INDEFEASIBLE PAYMENT IN FULL UNDER THE LOAN AGREEMENT; AND (b) SATISFACTIONS IN FULL OF THE SECURED OBLIGATIONS."

84.     On February 23, 2010, KBR Fund I executed a Unanimous Written Consent of the Proxy Holder and Attorney-In-Fact of the Sole Member of Colony Properties International II LLC (the "Colony II Unanimous Written Consent").  A true and correct copy of the Colony II Unanimous Written Consent is attached hereto as **Exhibit 9.**

85.     Through the Colony II Unanimous Written Consent, KBR Fund I, acting as the proxy holder and attorney-in-fact of Colony I, (1) removed Marsch as the manager of Colony II and stripped Marsh of all powers to act on behalf of Colony II, and (2) appointed KBR Group as the manager of Colony II.

86.     KBR Group is the current manager of Colony II.

87.     KBR Fund I, as the proxy holder and attorney-in-fact of the sole member of Colony II has the sole right to control Colony II.

88.     By the February 24th Letter, from counsel for the KBR Parties to Attorney Jeffrey Davis, transmitted via e-mail, the KBR Parties delivered a copy of Colony II Unanimous Written Consent and informed Attorney Davis that Marsch had been removed as the manager of Colony II. The letter also expressly directed Attorney Davis not to file a voluntary bankruptcy petition on behalf of Colony II.

89.     The Colony II Unanimous Written Consent was also served on Marsch and Colony I by certified mail and by e-mail on February 24, 2010. Marsch refused delivery of the certified mail. A true and correct copy of the refused certified letter containing the Colony II Unanimous Written Consent is attached hereto as **Exhibit 10.**

90.     On February 28, 2010, Marsch signed and filed on behalf of Briarwood Capital, Inc. (apparently a different entity than Briarwood Capital, LLC) an involuntary bankruptcy petition against Colony II.

91.     The change in control of Colony II occurred prior to the commencement of the Colony II Bankruptcy Case and the Marsch Bankruptcy Case.

**KRMW Real Estate Investment Group**

92.     Pursuant to the terms of the KRMW Operating Agreement, the sole members are Briarwood, which hold thirty-five units (35%) and KBR Fund II which holds sixty-five units (65%).

93.     Section 4.3 of the KRMW Operating Agreement provides in part: "The initial Manager shall be Marsch. If Marsch at any time cannot or will not act as Manager, or otherwise ceases serving as Manager for any reason, Marsch hereby consents that KBR Group, LLC, a California limited liability company, will be elected or otherwise appointed as and shall be the Manager."

94.     Pursuant to California Corporations Code section 17152, managers of a limited liability company may be removed, with or without cause, by the vote of a majority in interest of the members. Likewise, pursuant to section 17152, election of managers to fill vacancies shall be by the affirmative vote of a majority in interest of the members.

95.    On February 23, 2010, KRB Fund II held a majority of the interests in KRMW.

96.    On February 23, 2010, KBR Fund II executed a Written Consent of the Majority of the Members of KRMW Real Estate Investment Group, LLC (the "KRMW Written Consent").  A true and correct copy of the KRMW Written Consent is attached hereto as **Exhibit 11.**

97.    Through the KRMW Written Consent, KBR Fund II, as the majority interest holder of KRMW, (1) removed Marsch as the manager of KRMW and stripped Marsh of all powers to act on behalf of KRMW, and (2) appointed KBR Group as the manager of KRMW.

98.    KBR Group is currently the manager of KRMW.

99.    By the February 24th Letter from counsel for the KBR Parties to Attorney Jeffrey Davis, transmitted via e-mail, the KBR Parties delivered a copy of KRMW Written Consent and informed Attorney Davis that Marsch had been removed as the manager of KRMW.

100.    The KRMW Written Consent was also served on Marsch, Briarwood, and Colony I by certified mail and by e-mail on February 24, 2010. Marsch refused delivery of the certified mail. A true and correct copy of the refused certified letter containing the KRMW Written Consent is attached hereto as **Exhibit 12.**

101.    The change in control of KRMW occurred prior to the commencement of the Marsch Bankruptcy Case.

**Briarwood Capital**

102.    In furtherance of the KRMW Operating Agreement, Marsch executed that certain Security Agreement (the "Marsch/KBR Fund II Security Agreement") dated November 5, 2008. A true and correct copy of the Marsch/KBR Fund II Security Agreement is attached hereto as **Exhibit 13.**

103.    The Marsch/KBR Fund II Security Agreement granted to KBR Fund II a security interest in certain collateral including, without limitation, the following collateral:

16

"(i) All of Marsch's membership interest in CPI and Briarwood including, without limitation, the rights to hundred percent (100%) of the income, distributions, and capital of CPI and Briarwood, and voting rights of a hundred percent (100%) Member of CPI and Briarwood, and all of the hereafter-acquired membership interests of CPI and Briarwood in which Marsch, directly or indirectly, has an interest at any time, together with the proceeds of the foregoing, including any and all distributions, cash, membership interests, instruments, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for these membership interests (collectively, "Marsch Membership Interests"); (ii) Any and all of Marsch's current, pending, and/or future claims and causes of action (including commercial tort claims, contractual claims, or other claims) arising out of the project commonly referred to as "The Bridges at Rancho Santa Fe" including without limitation case no. GIC877446 pending in the Superior Court of California, County of San Diego; (iii) Any and all of Marsch's current, pending, and/or future claims and causes of action (including commercial tort claims, contractual claims, or other claims) arising out of the project commonly referred to as "The Lakes Above Rancho Santa Fe" including without limitation case no. GIC875457 pending in the Superior Court of California, County of San Diego (sections (ii) and (ii) shall be collectively referred to as the "Claims"); (iv) All of Marsch's rights and interests under the HCC Investors, LLC, a Delaware limited liability company, operating agreement sections 5.04, 6.05(a), 6.05(b), and 6.05(c) (the "Retained Benefits"); and (v) Any and all replacements, substitutes, and/or proceeds of or for any of the foregoing (the "Proceeds")."

104.     Section 7.3 of the Marsch/KBR Fund II Security Agreement provides that, upon the event of default, KBR Fund II has the right to exercise "all rights of Marsh to exercise the voting and other consensual rights that he would otherwise be entitled to exercise pursuant to the . . . Briarwood operating agreement . . . ."

105.     Section 7.4 of the Marsch/KBR Fund II Security Agreement provides that, upon the event of default, KBR Fund II has the right "vote the Marsch Membership Interests (whether or not transferred into the name of KBR), and give all consents, waivers and

17

1   ratifications in respect of the Collateral and otherwise act with respect thereto as though it

2   were the outright owner thereof; UPON THE EVENT OF DEFAULT AND AFTER ANY

3   APPLICABLE GRACE PERIOD, BORROWER HEREBY IRREVOCABLY

4   CONSTITUTES AND APPOINTS LENDER THE PROXY AND  ATTORNEY-IN-FACT

5   OF BORROWER, COUPLED WITH AN INTEREST, WITH FULL POWER OF

6   SUBSTITUTION TO DO SO; SUCH PROXY SHALL CONTINUE IN FULL FORCE

7   AND EFFECT AND TERMINATE UPON THE SOONER TO OCCUR OF: (a) THE

8   INDEFEASIBLE PAYMENT IN FULL UNDER THE OPERATING AGREEMENT; AND

9   (b) SATISFACTIONS IN FULL OF THE SECURED OBLIGATIONS."

10   106.   On February 24, 2010, KBR Fund II executed a Unanimous Written Consent

11   of the Proxy Holder and Attorney-In-Fact of the Sole Member of Briarwood Capital, LLC

12   (the "Briarwood Unanimous Written Consent").  A true and correct copy of the Briarwood

13   Unanimous Written Consent is attached hereto as **Exhibit 14.**

14   107.   Through the Briarwood Unanimous Written Consent, KBR Fund II, acting as

15   the proxy holder and attorney-in-fact of Marsch, (1) removed Marsch as the manager of

16   Briarwood and stripped Marsh of all powers to act on behalf of Briarwood, and (2) appointed

17   KBR Group as the manager of Briarwood with full powers to act on behalf of Briarwood

18   including, without limitation, all matters involving the Briarwood Bankruptcy Case.

19   108.   The change in control of Briarwood occurred after the commencement of the

20   Briarwood Bankruptcy Case and prior to the commencement of the Marsch Bankruptcy

21   Case.

## FIRST CAUSE OF ACTION

### (Declaratory Relief – Colony I)

24   109.   Plaintiffs incorporate paragraphs 1 through 108 above as if set forth in full

25   herein.

26   110.   There is a present controversy between the KBR Parties and the Marsch

27   Parties regarding who is in control of Colony I.

28

111.    Plaintiffs desire a judicial determination that (1) KBR Group is the sole authorized manager of Colony I, (2) KBR Group has the exclusive authority to make decisions for Colony I as the debtor in possession in the Colony I Bankruptcy Case, (3) Marsch is not the manager of Colony I, and (4) Marsch has no authority to make decisions for Colony I as the debtor in possession in the Colony I Bankruptcy Case.

112.    A judicial determination is necessary and appropriate at this time because, absent the appointment of a chapter 11 trustee, the Colony I Bankruptcy Case cannot proceed without a determination of who is in control of Colony I.

## SECOND CAUSE OF ACTION

### (Declaratory Relief – Colony II)

113.    Plaintiffs incorporate paragraphs 1 through 108 above as if set forth in full herein.

114.    There is a present controversy between the KBR Parties and the Marsch Parties regarding who is in control of Colony II.

115.    Plaintiffs desire a judicial determination that (1) KBR Group is the sole authorized manager of Colony II, (2) KBR Group has the exclusive authority to make decisions for Colony II with respect to the Colony II Bankruptcy Case, (3) Marsch is not the manager of Colony II, and (4) Marsch has no authority to make decisions for Colony II with respect to the Colony II Bankruptcy Case.

116.    A judicial determination is necessary and appropriate at this time because, absent the appointment of a chapter 11 trustee, the Colony II Bankruptcy Case cannot proceed without a determination of who is in control of Colony II.

## THIRD CAUSE OF ACTION

### (Declaratory Relief -- KRMW)

117.    Plaintiffs incorporate paragraphs 1 through 108 above as if set forth in full herein.

118.    There is a present controversy between the KBR Parties and the Marsch Parties regarding who is in control of KRMW.

119.   Plaintiffs desire a judicial determination that (1) KBR Group is the sole authorized manager of KRMW, (2) KBR Group has the exclusive authority to make decisions for KRMW, (3) Marsch is not the manager of KRMW, and (4) Marsch has no authority to make decisions for KRMW.

120.   A judicial determination is necessary and appropriate at this time because the control of KRMW is significantly related to the administration of the Colony II Bankruptcy Case and the Briarwood Bankruptcy Case.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief -- Briarwood)

121.   Plaintiffs incorporate paragraphs 1 through 108 above as if set forth in full herein.

122.   There is a present controversy between the KBR Parties and the Marsch Parties regarding who is in control of Briarwood.

123.   Plaintiffs desire a judicial determination that (1) KBR Group is the sole authorized manager of Briarwood, (2) KBR Group has the exclusive authority to make decisions for Briarwood as the debtor in possession in the Briarwood Bankruptcy Case, (3) Marsch is not the manager of Briarwood, and (4) Marsch has no authority to make decisions for Briarwood as the debtor in possession in the Briarwood Bankruptcy Case.

124.   A judicial determination is necessary and appropriate at this time because, absent the appointment of a chapter 11 trustee, the Briarwood Bankruptcy Case cannot proceed without a determination of who is in control of Briarwood.

## FIFTH CAUSE OF ACTION

### (Injunctive Relief – Colony I)

125.   Plaintiffs incorporate paragraphs 1 through 108 above as if set forth in full herein.

126.   Marsch is continuing to hold himself out as someone with authority to act on behalf of Colony I.

127.   Marsch, in fact, has no actual authority to act on behalf of Colony I.

20

128.    It is appropriate for the Bankruptcy Court to permanently enjoin Marsch from continuing to hold himself out as someone who is authorized to act on behalf of Colony I.

## SIXTH CAUSE OF ACTION

### (Injunctive Relief – Colony II)

129.    Plaintiffs incorporate paragraphs 1 through 108 above as if set forth in full herein.

130.    Marsch is continuing to hold himself out as someone with authority to act on behalf of Colony II.

131.    Marsch, in fact, has no actual authority to act on behalf of Colony II.

132.    It is appropriate for the Bankruptcy Court to permanently enjoin Marsch from continuing to hold himself out as someone who is authorized to act on behalf of Colony II.

## SEVENTH CAUSE OF ACTION

### (Injunctive Relief -- KRMW)

133.    Plaintiffs incorporate paragraphs 1 through 108 above as if set forth in full herein.

134.    Marsch is continuing to hold himself out as someone with authority to act on behalf of KRMW.

135.    Marsch, in fact, has no actual authority to act on behalf of KRMW.

136.    It is appropriate for the Bankruptcy Court to permanently enjoin Marsch from continuing to hold himself out as someone who is authorized to act on behalf of KRMW.

## EIGHTH CAUSE OF ACTION

### (Injunctive Relief -- Briarwood)

137.    Plaintiffs incorporate paragraphs 1 through 108 above as if set forth in full herein.

138.    Marsch is continuing to hold himself out as someone with authority to act on behalf of Briarwood.

139.    Marsch, in fact, has no actual authority to act on behalf of Briarwood.

140.    It is appropriate for the Bankruptcy Court to permanently enjoin Marsch from continuing to hold himself out as someone who is authorized to act on behalf of Briarwood.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request relief as follows:

1.    With respect to the First Cause of Action, a judicial determination that (1) KBR Group is the sole authorized manager of Colony I, (2) KBR Group has the exclusive authority to make decisions for Colony I as the debtor in possession in the Colony I Bankruptcy Case, (3) Marsch is not the manager of Colony I, and (4) Marsch has no authority to make decisions for Colony I as the debtor in possession in the Colony I Bankruptcy Case;

2.    With respect to the Second Cause of Action, a judicial determination that (1) KBR Group is the sole authorized manager of Colony II, (2) KBR Group has the exclusive authority to make decisions for Colony II with respect to the Colony II Bankruptcy Case, (3) Marsch is not the manager of Colony II, and (4) Marsch has no authority to make decisions for Colony II with respect to the Colony II Bankruptcy Case;

3.    With respect to the Third Cause of Action, a judicial determination that (1) KBR Group is the sole authorized manager of KRMW, (2) KBR Group has the exclusive authority to make decisions for KRMW, (3) Marsch is not the manager of KRMW, and (4) Marsch has no authority to make decisions for KRMW;

4.    With respect to the Fourth Cause of Action, a judicial determination that (1) KBR Group is the sole authorized manager of Briarwood, (2) KBR Group has the exclusive authority to make decisions for Briarwood as the debtor in possession in the Briarwood Bankruptcy Case, (3) Marsch is not the manager of Briarwood, and (4) Marsch has no authority to make decisions for Briarwood as the debtor in possession in the Briarwood Bankruptcy Case;

5.    With respect to the Fifth Cause of Action, an order permanently enjoining Marsch from (1) exercising control over Colony I or its assets, and (2) representing himself

1    to be the manager of Colony I or otherwise as someone who is authorized to act on behalf of

2    Colony I;

3         6.      With respect to the Sixth Cause of Action, an order permanently enjoining

4    Marsch from (1) exercising control over Colony II or its assets, and (2) representing himself

5    to be the manager of Colony II or otherwise as someone who is authorized to act on behalf of

6    Colony II;

7         7.      With respect to the Seventh Cause of Action, an order permanently enjoining

8    Marsch from (1) exercising control over KRMW or its assets, and (2) representing himself to

9    be the manager of KRMW or otherwise as someone who is authorized to act on behalf of

10   KRMW;

11        8.      With respect to the Eighth Cause of Action, an order permanently enjoining

12   Marsch from (1) exercising control over Briarwood or its assets, and (2) representing himself

13   to be the manager of Briarwood or otherwise as someone who is authorized to act on behalf

14   of Briarwood;

15        9.      Attorneys' fees and costs of suit to the extent recoverable under applicable

16   law; and

17        10.     Such other relief as may be just and proper.

18

19   March 9, 2010                    VANDERHOFF LAW GROUP

20                                         /s/ Alan Vanderhoff
                                      By: _____
21                                         Alan Vanderhoff

22                                    Attorneys for KBR Group, LLC, KBR Opportunity
                                      Fund I, LP, and KBR Opportunity Fund II, LP

23

24

25

26

27

28